# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOSE MAYORGA, on behalf of himself and others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>EVANS FOOD GROUP LTD; and DOES 1 to 100, inclusive,<br><br>Defendants. | No. 2:24-cv-05584-DSF-MAA<br><br>Order DENYING Mayorga's Motion for Remand and Request for Attorneys' Fees (Dkt. 12) |

   Defendant Evans Food Group LTD removed this action under the Class Action Fairness Act (CAFA), 28 U.S.C. § 1332(d)(2). Dkt. 1 (NOR) ¶ 8. Plaintiff Jose Mayorga moves for remand. The Court deems this matter appropriate for decision without oral argument. See Fed. R. Civ. P. 78; Local Rule 7-15. For the reasons stated below, the motion is DENIED.

## I. Background

   Mayorga filed this putative class action in California Superior Court, County of Los Angeles. Dkt. 20-1 (Liao Decl., Ex. A) (FAC). Mayorga brings claims for (1) unpaid minimum wage; (2) unpaid overtime wages; (3) unpaid meal period premiums; (4) unpaid rest period premiums; (5) unreimbursed business expenses; (6) failure to provide accurate wage statements; (7) failure to timely pay final wages upon termination; and (8) unlawful business acts and practices.

## II. Legal Standard

CAFA gives federal courts jurisdiction over class actions involving at least 100 class members where there is minimal diversity and at least $5 million in controversy. 28 U.S.C. § 1332(d). "Congress designed the terms of CAFA specifically to permit a defendant to remove certain class or mass actions into federal court . . . [and] intended CAFA to be interpreted expansively." Ibarra v. Manheim Invs., Inc., 775 F.3d 1193, 1197 (9th Cir. 2015). In a notice of removal, the defendant need only plausibly allege that the prerequisites are met. Dart Cherokee Basin Operating Co. v. Owens, 574 U.S. 81, 89 (2014). Once confronted with a motion to remand, however, the defendant bears the burden of establishing jurisdiction by a preponderance of the evidence. Id. at 88. Both "parties may submit evidence outside the complaint, including affidavits or declarations, or other summary-judgment-type evidence relevant to the amount in controversy at the time of removal." Ibarra, 775 F.3d at 1197 (cleaned up). There is no presumption against removal under CAFA. Dart Cherokee, 574 U.S. at 89 ("no antiremoval presumption attends cases invoking CAFA, which Congress enacted to facilitate adjudication of certain class actions in federal court").

## III. Discussion

The parties dispute the amount in controversy element of CAFA jurisdiction. Dkt. 12 (Mot.) at 8. Evans contends the amount in controversy is $7,252,457.89, broken down as follows:

| Claim | Amount in Controversy |
|---|---|
| Meal and Rest Period Premiums | $4,070,407.60 |
| Waiting Time Penalties | $246,780 |
| Wage Statement Penalties | $324,000 |
| Unpaid Overtime | $610,561.14 |
| Unpaid Minimum Wage | $327,547.57 |
| Unreimbursed Business Expenses | $222,670 |
| **Sub-Total** | **$5,801,966.31** |
| Attorneys' Fees (25% of Sub-Total) | $1,450,491.58 |
| **Total** | **$7,252,457.89** |

2

Dkt. 20 (Opp'n) at 20.  Mayorga argues that Evans has not sufficiently established these amounts.

### A.     Meal and Rest Period Premiums

California Labor Code § 226.7(b) provides that "[a]n employer shall not require an employee to work during a meal or rest or recovery period[.]"  An employer who fails to provide an employee with a meal or rest or recovery period required by state law must pay the employee "one additional hour of pay at the employee's regular rate of compensation for each workday that the meal or rest or recovery period is not provided."  Cal. Labor Code § 226.7(c).  Employers are required by law to provide an employee a meal period of not less than 30 minutes for a work period of more than five hours, and a second meal period of not less than 30 minutes for a work period of more than ten hours.  Cal. Labor Code § 512(a).  Further, employers must "authorize and permit all employees to take rest periods" at the rate of ten minutes for every four hours—or major fraction thereof—worked.  Wage Order 4 § 12.  Mayorga seeks to recover unpaid premium wages for failure to provide legally required meal and rest periods over a period of four years.  FAC ¶¶ 48, 79, 88.

Evans calculated the meal break premium amount in controversy by first determining that the company had "approximately 156 non-exempt employees in California within the putative class who worked approximately 22,267 work weeks during" the statutory period.  NOR ¶ 38 (citing Dkt. 1-5 (Altman Decl.) ¶ 9).  Evans then used company payroll and human resources data to determine that the average shift length for those employees was 8.59 hours per day, and that those employees worked an average of 5 days per week.  Opp'n at 14 (citing Dkt. 20-2 (Altman Supp. Decl.) ¶ 4).  Using the average hourly rate of

pay for those employees ($18.28)[1] and assuming that putative class members missed 5 meal periods per workweek, Evans calculated the amount placed in controversy by Mayorga's meal period claims as being $2,035,203.80 ($18.28 x 5 meal periods x 22,267 work weeks). NOR ¶ 37; Opp'n at 15. For the rest period premium amount, Evans applied the same methodology ($18.28 x 5 rest periods x 22,267 work weeks) to calculate an amount in controversy of $4,070,407.68 for both claims. Id.

Mayorga argues that it is unreasonable for Evans to assume, without evidence, a 100% violation rate. Mot. at 16-17. But Mayorga alleges that Evans employed "policies, practices, and/or procedures" that required Mayorga and the putative class to "remain on-duty" during meal and rest periods due to the company's requirement" that they keep a company "cell phone on them and monitored at all times during their shift including during off the clock meal breaks so they can [ ] take calls from management and coworkers while off the clock during meal breaks." FAC ¶ 28. Mayorga further alleges that Evans "employed policies and procedures that ensured that employees did not receive any meal period premium wages to compensate them for workdays in which they did not receive all legally required and compliant meal periods." Id. ¶ 29. And while Mayorga notes that there may have been "occasions" when Evans paid premium wages, Mayorga still contends that those payments were insufficient. Id. ¶ 30. Mayorga alleges that these same policies, practices, and procedures were adopted as to rest periods. See id. ¶¶ 34-36.

These allegations describe a uniform practice of meal and rest period violations, and courts in this district have concluded that assuming a 100% violation rate is reasonable based on similar allegations. Alvarez v. Off. Depot, Inc., No. 2:17-CV-07220-PSG-AFM, 2017 WL 5952181, at *3 (C.D. Cal. Nov. 30, 2017) ("Given Plaintiff's

---

[1] Evans used company payroll and human resources data to determine that "the average non-exempt employee working in California [ ] earned an average of $18.28 per hour" during the statutory period. Altman Decl. ¶ 9.

allegation that he and his fellow class members *never* received compliant meal or rest periods because they were 'on-call' at all times, a 100 percent violation rate can be reasonably assumed.") (collecting cases).

Moreover, Mayorga "fails to assert any different rate of violation or to submit any evidence indicating a contrary rate of violation." Unutoa v. Interstate Hotels & Resorts, Inc., No. 2:14-CV-09809-SVW-PJW, 2015 WL 898512, at *3 (C.D. Cal. Mar. 3, 2015). Instead, Mayorga contends that without "evidence that every single one of Defendant's employees missed every single one of their meal and rest breaks, there is no basis for Defendant's" assumed violation rate. Mot. at 16. The Court does not agree. While it is true that "the burden of demonstrating the reasonableness of the assumptions on which the calculation of the amount in controversy was based remain[s] at all times with" the defendant, in doing so "a defendant may rely on reasonable assumptions . . . [and] need not make the plaintiff's case for it or prove the amount in controversy beyond a legal certainty." Harris v. KM Indus., Inc., 980 F.3d 694, 701 (9th Cir. 2020) (cleaned up). Indeed, "a CAFA defendant's amount in controversy assumptions in support of removal will always be just that: *assumptions*." Jauregui v. Roadrunner Transportation Servs., Inc., 28 F.4th 989, 993 (9th Cir. 2022) (emphasis in original). Because assumptions are "inescapable at this early stage of the litigation, the removing party must be able to rely on a chain of reasoning that includes assumptions to satisfy its burden[,] . . . as long as the reasoning and underlying assumptions are reasonable." Id. (cleaned up).

Considering the evidence submitted by Evans and Mayorga's broad allegations and failure to provide any rebutting evidence or contrary violation rate, an assumed violation rate of five missed meal periods and five missed rest periods per work week is reasonable. The Court finds Evans has proven by a preponderance of the evidence that the meal and rest period premium claims place $4,070,407.60 in controversy.

5

B.  **Waiting Time Penalties**

An employer's failure to timely pay wages owed pursuant to sections 201 or 202 of the Labor Code results in a penalty in the amount of the employee's wages for every day that payment is late, up to a maximum of thirty days' wages. Cal. Labor Code § 203. Evans adopts the thirty-day maximum for its waiting time penalties calculation. NOR ¶ 49; Opp'n at 16-17. The statute of limitations for a waiting time penalties claim under sections 201 and 202 is three years. See Pineda v. Bank of Am., N.A., 50 Cal. 4th 1389, 1401 (2010); Cal. Civ. Proc. Code § 338(a). Evans calculates the amount in controversy by multiplying the average hourly rate ($18.28), average hours worked per day rounded to the nearest hour (9.0), total terminated employees within the limitation period (50), and the maximum penalty period (30) to arrive at $246,780 in controversy. NOR ¶ 49; Opp'n at 16-17.

Mayorga again disputes the reasonableness of Evans' assumed 100% violation rate, arguing that there is no evidence to support such a rate. Mot. at 17-19. But, considering the analysis in Jauregui v. Roadrunner Transportation Services, 28 F.4th at 993-94, an assumption may be reasonable even without supporting evidence. In Jauregui, the circuit held that "the district court erred in its amount in controversy analysis by assigning a $0 valuation to several claims[.]" Id. at 991. As an example of its "inappropriate demand of certitude from [the defendant] over its assumptions used in calculating the amount in controversy[,]" id. at 993, the circuit pointed to the district court's analysis of the waiting time penalty claims:

> As one example, the court rejected Roadrunner's assumption that each terminated employee would have been entitled to the maximum 30-day waiting time penalty because Roadrunner "provides no evidence" supporting that fact. But it was not unreasonable for Roadrunner to assume that the vast majority (if not all) of the alleged violations over the four years at issue in this case would have happened more than 30 days before the suit was filed, which would entitle the employees to the 30-day penalty.

6

> The fact that a very small percentage of employees might possibly not be entitled to the maximum penalty is not an appropriate reason to dismiss altogether Defendant's estimate for this claim.

Id. at 993-94. Although Evans perhaps overstates the holding of Jauregui, the Court finds the above reasoning controlling.

Mayorga broadly alleges that Evans failed to pay all meal and rest period premiums, overtime wages, and minimum wage for all hours worked. FAC ¶ 151. If Mayorga were to prove these claims, it would logically follow that Evans failed to pay all wages owed, and it "was not unreasonable for [Evans] to assume that the vast majority (if not all) of the alleged violations . . . would have happened more than 30 days before the suit was filed[.]" Jauregui, 28 F. 4th at 994.

The Court finds that the waiting time penalty claim places $246,780 in controversy.

C.  **Wage Statement Penalties**

"An employee suffering injury as a result of a knowing and intentional failure by an employer" to provide accurate wage statements under Labor Code § 226(a) "is entitled to recover the greater of all actual damages or fifty dollars ($50) for the initial pay period in which a violation occurs and one hundred dollars ($100) per employee for each violation in a subsequent pay period, not to exceed an aggregate penalty of four thousand dollars ($4,000)[.]" Cal. Labor Code § 226(e)(1). The statute of limitations for penalties under section 226(e)(1) is one year.

Evans calculated the wage statement penalty amount in controversy by applying the $4,000 maximum statutory penalty to the approximately 81 non-exempt employees employed in California during the entire statutory period for a total of $324,000. NOR ¶ 43-44; Opp'n at 15.

Mayorga argues that there is no basis to support Evans' assumption that all "81 non-exempt employees who received wage

7

statements received inaccurate ones." Mot. at 17. But in assessing the amount in controversy, a court "accepts the allegations contained in the complaint as true and assumes the jury will return a verdict in the plaintiff's favor on every claim." Henry v. Cent. Freight Lines, Inc., 692 F. App'x 806, 807 (9th Cir. 2017). If Mayorga's broad allegations of failure to pay all wages—whether through unpaid meal and rest period premiums, overtime, or minimum wage—are true, FAC ¶¶ 150-53, then Evans also would have failed to issue accurate wage statements showing all hours worked. Having been presented with no evidence that would suggest a narrower reading of the allegations, the Court finds Evans was justified in its use of a 100% violation rate. And because Mayorga and the putative class were paid weekly, Opp'n at 15, it was reasonable to calculate the amount in controversy using the maximum penalty.

The Court finds that the wage statement penalty claim places $324,000 in controversy.

### D. Unpaid Overtime

Labor Code § 510(a) provides that "[a]ny work in excess of eight hours in one workday and any work in excess of 40 hours in any one workweek . . . shall be compensated at the rate of no less than one and one-half times the regular rate of pay for an employee." Mayorga seeks to recover unpaid overtime wages for failure to provide legally required meal and rest periods over a period of four years. FAC ¶¶ 48, 70.

Evans calculated the unpaid overtime amount in controversy by assuming one hour of unpaid overtime per week for each of the 156 non-exempt California employees in the putative class. NOR ¶ 31-32; Opp'n at 13. Using the average hourly rate of those employees and counting approximately 22,267 total work weeks within the statutory period, Evans determined the amount in controversy for Mayorga's unpaid overtime claim to be more than $610,561.14 ($18.28 x 1.5 overtime rate x 1 unpaid hour x 22,267 work weeks). Id.

Mayorga argues that there is no basis to assume one hour of unpaid overtime per employee per week because he "does not allege—

8

and there is no evidence—that every single one of [Evans'] non-exempt employees earned 'shift differential pay.'" Mot. at 15-16. But this line of argument fails to consider many of Mayorga's allegations and does not contend with the evidence Evans submitted regarding the length of an average shift and an average workweek.

Mayorga does not merely base his unpaid overtime claims on his allegations regarding shift differential pay. He also alleges that Evans, by policy, practice, and procedure, required the putative class to "remain on-duty during their off-the-clock meal breaks . . . [and] to take calls from management and coworkers while off the clock after clocking out for the end of their shift." FAC ¶ 64. And Mayorga broadly contends that himself and the putative class "were not paid for this time" and that, where that unpaid time resulted in overtime hours, Evans "failed to pay them at their overtime rate of pay for all the overtime hours they worked." Id. ¶¶ 65-66.

Evans submitted additional evidence based on company payroll, timekeeping, and human resources data, which demonstrated, based on a large sample of the timekeeping records during the statutory period of 71 non-exempt California employees, that employees worked an average of 8.59 hours per day, an average of 5 days per week, and an average of 42.44 hours per week. Altman Supp. Decl. ¶ 4. By declining to file a reply, Mayorga has failed to dispute the accuracy of this data.

The assumption of one hour of unpaid overtime per employee per week is reasonable considering the undisputed timekeeping data and in light of Mayorga's broad allegations. The Court finds that the unpaid overtime claim places $610,561.14 in controversy.

### E. Unpaid Minimum Wage

Any employee who receives less than the legal minimum wage is entitled to recover any unpaid minimum wage pursuant to Labor Code § 1194(a). Mayorga seeks to recover unpaid minimum wage for a period of four years, alleging that Evans failed to pay all wages earned at the applicable minimum wage for all hours worked due to the company's policies, practices, and procedures, which included requiring

9

the putative class to "remain on-duty during their off-the-clock meal breaks . . . [and] to take calls from management and coworkers while off the clock after clocking out for the end of their shift." FAC ¶¶ 15, 48.

Evans calculates the amount in controversy of this claim by determining the average minimum wage during the statutory period ($14.71) and assuming one hour of unpaid minimum wage per employee per week (22,267), resulting in a total of $327,547.57. Opp'n at 18. Mayorga does not dispute Evans' calculation.[2] The Court finds Evans' estimate appropriate.

### F.  Unreimbursed Business Expenses

Labor Code § 2802(a) requires an employer to "indemnify his or her employee for all necessary expenditures or losses incurred by the employee in direct consequence of the discharge of his or her duties[.]" Mayorga alleges that Evans "employ[ed] policies, practices, and/or procedures of impermissibly passing business-related expenses" on to Mayorga and the putative class, including through requiring them to use their personal cell phone for work purposes without reimbursement. FAC ¶ 91. Mayorga seeks to recover full indemnification for these expenditures for a period of four years. Id. ¶¶ 48, 96.

Evans calculates the amount in controversy of this claim by approximating $10 in improper cell phone expenses per pay period, placing $222,670 in controversy. Opp'n at 19. Mayorga does not dispute Evans' calculation. The Court finds Evans' estimate appropriate.

---

[2] In the Notice of Removal, Evans' calculation of the amount in controversy did not include Mayorga's claims for unpaid overtime or unpaid business expenses. NOR ¶ 53. Because Mayorga declined to file a reply, he has failed to dispute Evans' calculations for those claims.

10

### G. Attorneys' Fees

Mayorga claims that he is entitled to recover attorneys' fees on his first, second, fifth, sixth, and eighth causes of action. FAC ¶¶ 57, 70, 96, 157, 171. It is well-established that attorneys' fees are properly included in a calculation of the amount in controversy for diversity jurisdiction purposes. Fritsch v. Swift Transportation Co. of Arizona, LLC, 899 F.3d 785, 794 (9th Cir. 2018) ("We have long held . . . that attorneys' fees awarded under fee-shifting statutes or contracts are included in the amount in controversy.").

Because Evans has demonstrated by a preponderance of the evidence that the amount in controversy without attorneys' fees exceeds $5 million, the Court need not decide whether it agrees with Evans' approach to the calculation of those fees. It suffices to note that a reasonable amount of fees based on the damages amount calculated above brings the amount in controversy comfortably over the threshold required by CAFA.

## IV. Conclusion

Evans has established by a preponderance of the evidence that the amount in controversy exceeds $5 million. Plaintiff's Motion to Remand and Request for Attorneys' Fees is DENIED.

IT IS SO ORDERED.

Date: August 30, 2024

Dale S. Fischer
United States District Judge